Samuel Horner, Jr., *v.* Charles E. C. Warfield, Defendant, and George W. Kelly, Joseph Johnson, James Mander and Theodore D. Steinmetz, trading as Mander & Steinmetz and John P. Shaefer, terre-tenants, Appellants.

*Mortgage—Affidavit of defense—Scire facias.*

On a scire facias sur mortgage, it appeared that the mortgage was dated and recorded on August 13, 1894. The affidavit of defense filed by terre-tenants who had been contractors and material men for the mortgagor in building the houses covered by the mortgage averred that on December 26, 1893, the mortgagor and the terre-tenants entered into an agreement by which the latter agreed to finish a large number of houses and take payment by conveyances of some of the houses to them; that the mortgagee had notice of this agreement; that he had been furnishing money to the mortgagor on the operation, and had agreed to continue to do so as shown by a letter annexed to the affidavit of defense. The letter showed that the mortgagee had agreed to furnish the money, and to release an existing mortgage on condition that all of the houses were finished in good and workmanlike manner within a certain period. The affidavit of defense did not aver that the conditions of the agreement or of the letter had been performed, or that the conveyances to the terre-tenants had been made in pursuance of the agreement. *Held,* that the affidavit of defense was insufficient.

Argued Jan. 11, 1897. Appeal, No. 424, Jan. T., 1896, by the terre-tenant defendants, from order of C. P. No. 1, Phila. Co., March T., 1890, No. 436, making absolute a rule for judgment for want of a sufficient affidavit of defense. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Scire facias sur mortgage.

Rule for judgment for want of a sufficient affidavit of defense. Before BRÉGY, J.

The terre-tenants who had been permitted to intervene filed an affidavit of defense, the material portions of which were as follows :

That deponents are the owners respectively of the lots of ground, with the buildings thereon erected, hereinafter more particularly described; that said lots of ground are included in

the mortgage upon which above suit is brought; that said properties were conveyed to them by said Charles E. C. Warfield, the above-named defendant; that the properties owned by them are as follows : . . . . That said mortgage is wholly void, and that there is nothing due upon same, as it was given without consideration, and is a fraud upon deponents, as appears by the following statement of facts : That on or about the twenty-sixth day of December, A. D. 1893, the said defendant, Charles E. C. Warfield, was engaged in building one hundred and seventy-four houses on Clearfield, Clementine and Lippincott streets, between " E " and " F " streets, in the city of Philadelphia; that the lots of ground, with said houses thereon, owned respectively by said deponents, and which are covered by the mortgage upon which the present suit is brought, were included in said building operation; that deponents were contractors and material men, engaged in furnishing labor and material toward the erection of the said one hundred and seventy-four houses, and creditors of defendant, Charles E. C. Warfield; that plaintiff, Samuel Horner, Jr., was making advances of money to said Charles E. C. Warfield to enable him to carry on said building operation, said Samuel Horner, Jr., having, as security for the advances of money so made, ground rents of one thousand dollars each upon each of said lots of ground; that on or about the said twenty-sixth day of December, A. D. 1893, the said Charles E. C. Warfield, being unable to carry out the provisions of the several contracts existing between him and deponents and the other creditors, and make the payment of money therein agreed upon, entered into an agreement or declaration of trust, by the terms of which he was to pay over the balance of money due from said plaintiff, Samuel Horner, Jr., to a committee appointed by and from said creditors, and convey all the said one hundred and seventy-four houses to deponents and other creditors, free and clear of all incumbrances, excepting only said ground rents of one thousand dollars each, as aforesaid, all of which will appear by a copy of said declaration of trust hereto attached, marked " Exhibit A," and hereby made a part of this affidavit; that said Samuel Horner, Jr., acting by his duly authorized agent, Thomas M. Longcope, who attended to the details of making the advances, etc., in his behalf, acquiesced in said arrangement in a letter written to said Charles

E. C. Warfield, as appears by a copy attached to the said declaration of trust marked " Exhibit A,"and had full knowledge and notice of the said declaration of trust and agreement made between said Charles E. C.Warfield and his creditors, among whom were deponents, said declaration being repeatedly shown and exhibited to said Thomas M. Longcope ; that subsequently, on the thirteenth day of August, A. D. 1894, said Charles E. C. Warfield, in fraud of the right of deponents and without their knowledge and consent, executed a mortgage for the sum of seventeen hundred dollars, said mortgage being the one upon which the above suit is brought; deponents believe and are informed that no money whatever was paid by said Samuel Horner, Jr., or by any one in his behalf, upon above mortgage, but that same was given as a commission to said Thomas M. Longcope, and is held by said Samuel Horner, Jr., for him, although both Samuel Horner, Jr., and Thomas M. Longcope knew at the time said mortgage was executed that said Charles E. C. Warfield simply held the title to said properties in trust for your deponents and the other creditors, and although said Thomas M. Longcope had received large sums of money as commissions from the advances due Charles E. C. Warfield, amounting to upwards of several thousand dollars; that deponents have refused to recognize said mortgage, and have never paid the interest alleged to be due upon same ; that deponents and other creditors were compelled to take a less amount than the money due them under their several contracts with said Charles E. C. Warfield, and aver that said mortgage is wholly void, all of which facts deponents respectively say are just and true so far as the same are of their own knowledge, and so far as they are informed, believe them to be true, and expect to be able to prove them upon the trial of this cause.

Horner's letter was as follows :

" PHILADELPHIA, December 26, 1893.
" MR. CHARLES E. C. WARFIELD :

" Dear Sir : Replying to your inquiry as to how and when I would be willing to make you the last payments on the 174 houses situate on Clearfield street, Clementine street and Lippincott street, Philadelphia, now being erected under our agreement of May 8th, 1893, let me say the balance which would be

due you for the 104 houses situate on said Clearfield street and both sides of said Clementine street, completely finished according to the terms of said agreement would be twelve thousand six hundred and nine $\frac{60}{100}$ dollars ($12,609.60), and on the 70 houses on said Lippincott street were they also completely finished as aforesaid, the sum of ten thousand, four hundred and forty-nine $\frac{60}{100}$ dollars ($10,449.60). You have more specifically asked me three questions as follows : 1st. How and when am I willing to make the above mentioned payments? 2. What will I consider necessary to be done to and about said houses to satisfy me to make the final payments thereon? 3rd. At what period I will consent to have released certain houses from the lien of a certain mortgage dated May 8th, 1893, and recorded in mortgage book T. G., No. 309, page 13, etc. In reply to first of these specific questions as to how and when I am willing to make the above mentioned payments, let me here say that I am willing and will pay you one thousand dollars ($1,000) per week on account for seven consecutive weeks on Friday of each week, provided the work on said 174 houses progresses in the various branches of trade in a good and workmanlike manner continuously with all reasonable haste, and the necessary material is being furnished to prosecute said work to my satisfaction, giving me an earnest and promise that the entire work will be prosecuted to completion according to the terms of said agreement in the shortest reasonable time that the same can be accomplished, commencing said completion by first completing the one hundred and four (104) houses on said Clearfield street and Clementine street, which said 104 houses are to be completed, it is hereby understood, according to your promise, within sixty (60) days from this date, and this letter of understanding is predicated on that promise. And in the meantime all the work not already completed in all the various departments and trades, including the furnishing of all necessary materials therefor, is to steadily and continuously progress in such a manner and way to warrant and justify me in the belief that all of said work shall be completed within sixty days, so far as relates to the 104 houses. If said work does so continue and progress we will make you the payments of said one thousand dollars per week as aforesaid for the period of seven weeks, and the payment of five thousand six hundred and nine and $\frac{60}{100}$ dollars, being the bal-

ance of said twelve thousand six hundred and nine $\frac{60}{100}$ dollars, on the completion of said one hundred and four houses, provided they are so completed within sixty days.   We will not, however, withhold said balance of five thousand six hundred and nine $\frac{60}{100}$ dollars from you if the outer work has satisfactorily progressed, if the streets are not paved or the houses have not the gas fixtures, in them, or they are not papered, provided everything else is done.   This, I think, answers the first and second questions.   As to the third question, at what period we will release certain houses from the lien of said mortgage, I would say that if 104 houses are substantially completed as aforesaid within said sixty days I will consent to release from the lien of said mortgage of thirty-four houses—seventeen on Clearfield street and seventeen on Clementine street.   And, if in addition to the completion of said one hundred and four houses on said Clearfield street and Clementine street, the work is satisfactorily progressing and the various materials are being furnished and delivered at the said operation, on and for said seventy houses on said Lippincott street, then I will consent to the release from the lien of said mortgage of twenty-six houses on said Clearfield street and thirty-four houses on said Clementine street.   And on compliance with the aforesaid, as to the ten thousand four hundred and forty-nine $\frac{60}{100}$ dollars, payable on completion of said seventy houses on said Lippincott street, I am willing to make payments from time to time on account as the work progresses to my satisfaction.   I believe all of the above is entirely within the spirit of the aforesaid building agreement, and it is intended to be in conformity therewith and not to change said agreement in any way.   And should you not so also clearly understand this letter the building agreement shall interpret it and not this letter interpret the building agreement, as the building agreement is to stand inviolate and unchanged in any event. Let me also add, should you be able to and do complete said houses before the expiration of said sixty days I will pay the balance due under the agreement at such time as said houses are completed.   I also reserve the right to anticipate any payment or consolidate two or more weekly payments or any part thereof for the purpose of facilitating the operation or hastening its completion if I deem it best, and the work in my judgment shall justify me in so doing, and any such anticipation shall be

deemed and taken as in accordance with the terms hereinbefore
set forth.

" (Signed) THOMAS M. LONGCOPE,

" For SAMUEL HORNER, Junior."

The court made the rule absolute.   The terre-tenants appealed.

*Error assigned* was above order.

*Clarence S. Eastwick,* with him *Samuel Evans Maires,* for appellants.—At the time the mortgage upon which suit was brought in this case was executed, the mortgagor was trustee for the creditors of the building operation, and held the legal title in trust for them : Act of April 22, 1856, P. L. 532 ; Hickman v. Bingaman, 23 W. N. C. 401 ; Whitaker v. Richards, 134 Pa. 191 ; Keyser v. Keen, 17 Pa. 327 ; Grim v. School Directors, 51 Pa. 219 ; Flannery v. Dechert, 13 Pa. 507 ; Ins. Co. v. Dunham, 117 Pa. 475.

Warfield having simply the legal title to the properties on August 13, 1894, when the mortgage was executed, and both Horner and Longcope having knowledge and notice of that fact, it was invalid as against the creditors, who were the equitable owners thereof : Bigley v. Jones, 114 Pa. 510 ; White v. Patterson, 139 Pa. 429.

*Frank P. Prichard,* with him *Robert B. Fletcher* for appellee.— This case falls directly within the principle laid down by this court in Class v. Kingsley, 142 Pa. 638.

PER CURIAM, February 1, 1897 :

At the time the mortgage in suit was executed and recorded, Warfield, the mortgagor, held the legal and equitable title to the land covered by the mortgage.   As the holder of such title it was entirely competent for him to execute and deliver the mortgage in question and bind the land covered by it as against all other persons.   The mortgage was recorded on the day of its execution, and from that day forward the record was notice to all the world of its existence and contents.   That notice included all of the present appellants.   The mortgage was executed, delivered and recorded on August 13, 1894.   While

the affidavit of defense does not give the date of the deeds from Warfield to the appellants, it is a necessary inference that their conveyances were subsequent in time to the mortgage in suit, since if they were not, their title would not be affected by the mortgage and there would be no occasion for their present intervention.   This being so the only question is whether the facts set out in the affidavit of defense constitute any defense against the mortgage.   There is no averment in the affidavit which really questions the consideration of the mortgage.   The facts which are set forth in the affidavit as impugning the validity of the mortgage are not sufficient for that purpose.   The agreement between the appellants and others, and Warfield, while entirely obligatory and efficacious as between them, cannot of itself affect Horner's mortgage or his rights under it.   The averment that the mortgage was given to secure Longcope's commission does not impeach its consideration.   As to the agreement between Warfield and his creditors, and the letter of Horner expressing the terms upon which he would make further advancements, the affidavit does not allege any compliance with the conditions of the agreement, or with the terms expressed in Horner's letter.   The facts stated in the affidavit may be literally true and yet the plaintiff's right to recover on the mortgage not be impaired in the least.

Judgment affirmed.